**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **LOGAN M. DRUMM,** | § | |
| **ID # 2032303,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No.  3:16-CV-3482-M-BH** |
| | § | |
| **SHERIFF LUPE VALDEZ, et al.,** | § | |
| **Defendants.** | § | **Referred to U.S. Magistrate Judge[1]** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, only the plaintiff's failure to intervene claims against Gibbons, Sanders, Valero, Bailey, and Benson, and the excessive force claims against Valero, Weeks, Haggerman, Mosely, Bailey and Benson should be allowed to proceed, and all remaining claims should be **DISMISSED**.

**I.  BACKGROUND**

Logan M. Drumm (Plaintiff), an inmate in the Texas Department of Criminal Justice, Polunsky Unit, sues Sheriff Lupe Valdez (Sheriff); Sgt. Stockton (Sergeant); Correctional Officers (CO) Valero, Weeks, Moreno, Gibbons, and Sanders[2]; Special Response Team (SRT) Officers Haggerman, Mosely, Bailey, and Benson; Nurse Brent (Nurse); Nurse's supervisor; and Nurse's employer, under 42 U.S.C. § 1983 for alleged violations of his constitutional rights.  (doc. 15 at 2, 4-5.)[3]

Plaintiff alleges that while he was a pretrial detainee in the Dallas County Jail, he was

---

[1]By *Special Order No. 3-251*, this *pro se* prisoner case has been automatically referred for full case management.

[2]Plaintiff spelled this defendant's last name as "Saunders" in his original complaint and answers to the magistrate judge's questionnaire (MJQ) (*see* docs. 3, 9), but spells his last name as "Sanders" in his amended complaint (*see* doc. 15).

[3]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

considered "high security, with a high profile designation which indicated anytime he left his cell he was to be escorted by SRT." (doc. 3 at 8.) On July 3, 2015, he was visiting family in a visitation booth. (*Id.* at 9; docs. 9 at 5; 15 at 6.) After he was let out of the booth without handcuffs or an SRT escort, Moreno grabbed his shirt, and Plaintiff "reflexively pulled away, and had an exchange of words" or confrontation with him. (docs. 3 at 9; 9 at 5-6, 14, 22, 25.) Weeks and Valero ran over and jumped on Plaintiff, began assaulting him, and attempted to slam him to the floor. (docs. 3 at 9; 9 at 6, 11, 14, 22, 25, 27-28.) He asked why he was being jumped, stated that he had not done anything, and resisted being slammed to the floor because he was afraid of being kicked, stomped or injured. (docs. 3 at 9; 9 at 28.) Weeks and Valero wrestled him to his cell, and as Plaintiff attempted to go in, he said to Weeks, "You wanna punch on inmates and run in their cell." (docs. 3 at 10; 9 at 28.) Another officer told Weeks to go into the cell with Plaintiff and fight him. (*Id.*) Weeks slammed the cell door on Plaintiff's body, and grabbed and twisted his arm in what seemed like an attempt to break it, resulting in a "one inch bone deep gash" on Plaintiff's right elbow. (docs. 3 at 10; 9 at 11-12, 22, 28, 30.)

Plaintiff alleges that SRT officers arrived and ordered him to lay down for a cell extraction to the infirmary, and he complied. (docs. 3 at 10; 9 at 28-29.) Weeks, Mosley, Haggerman, Bailey, and Benson then entered the cell and began assaulting and punching him while he was face-down on the floor. (docs. 3 at 10; 9 at 7-8, 12, 22, 28-29.) They grabbed him and lifted him up by his arms, which were behind him. (docs. 3 at 10; 9 at 22, 29.) They walked him to the infirmary while twisting and applying extreme pressure to his arms. (doc. 9 at 22, 29.) After they released him, they surrounded him, taunted him by telling him to take a swing, and threatened to kill him. (*Id.*) They took him inside the infirmary, and Mosley slammed him to the floor and began choking him to near unconsciousness. (*Id.* at 8, 22, 29.) The other officer defendants were bending his legs backwards,

2

and Plaintiff thought they were going to kill him. (*Id*. at 29.) Sanders told them to let him up, but after Plaintiff complained that he had not done anything and was being beaten for no reason, they "took" him to the floor and started choking him again. (*Id*. at 29.) He was eventually handcuffed, but the cuffs were so tight that they caused him pain, and his hands went numb. (*Id*. at 23, 29.) He yelled that the handcuffs were hurting him, but Haggerman and Mosely slammed him to the floor and choked him until he was unconscious. (*Id*. at 23.) He was then strapped into a chair while his elbow continued to bleed. (*Id*. at 23.) He alleges that Sanders, Gibbons, and Nurse were present during the use of force. (*Id*. at 17-19.)

Plaintiff alleges that despite having a one-inch bone deep gash on his right elbow that was bleeding, Nurse only provided very basic first aid, and that he did not receive stitches for his gash until the next day. (*Id.* at 31.) In addition to the gash on his elbow, he had bruises and was very sore. (*Id*. at 30.) He still has a noticeable knot on his right wrist and experiences numbness in his hand from the handcuffs. (*Id.*) He also claims to have "psychological damage" as a result of the assaults in the form of nightmares, flashbacks, anxiety, and paranoia. (doc. 15 at 7.)

Plaintiff claims that Valero, Weeks, Mosely, Haggerman, Bailey, Benson, and Moreno participated in the assaults and used excessive force. (docs. 9 at 5, 7, 9, 11, 13, 15, 16; 15 at 4-5.) He claims that Sanders, Gibbons, Sergeant, Valero, Bailey, Benson, Moreno, and Nurse witnessed the assaults but failed to intervene or protect him. (docs. 3 at 5-6, 11; 9 at 3-5, 13, 15-19; 15 at 4-5.) He claims Sheriff failed to train and supervise the officers, and Sergeant failed to restrain and control the officers. (docs. 9 at 17, 19; 15 at 4-5.) He claims that Nurse denied him adequate medical care (docs. 9 at 18, 31; 15 at 5), and that her employer and supervisor failed to train and supervise her (doc. 15 at 5). He also claims that the officer defendants conspired to assault him and conspired with medical staff to deny him adequate medical treatment. (doc. 15 at 4-5, 8.) He does not state

3

the capacity in which he sues Nurse's employer and supervisor, but he sues Sheriff in her official and individual capacities, and he sues the other defendants in their individual capacities.  (doc. 9 at 2-19.)

## II.  PRELIMINARY SCREENING

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis*.  As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.  *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam).  Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A claim is frivolous when it "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory."  *Id.* at 327.  A claim fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.  SECTION 1983

Plaintiff sues under 42 U.S.C. § 1983.  Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).  It

4

"afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id.* To state a claim under § 1983, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

## A.    Excessive Force

Plaintiff asserts excessive force claims against Moreno, Valero, Weeks, Mosley, Haggerman, Bailey, and Benson. (doc. 15 at 4-5.)

"The Eighth Amendment ensures the safety of convicted prisoners while due process under the Fourteenth Amendment protects pretrial detainees." *Baughman v. Hickman*, 935 F.3d 302, 306 (5th Cir. 2019) (citing *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996)). In the Fifth Circuit, "Fourteenth Amendment case law concerning pretrial detainees [is based] on the Supreme Court's Eighth Amendment precedent concerning prisoners." *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019) (citing *Hare*, 74 F.3d at 643-44).

To prevail on a use of force claim under the Fourteenth Amendment, the pretrial detainee must show that "the force purposefully and knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015). The standard is whether the actions were "rationally related to a legitimate nonpunitive governmental purpose" or were "excessive in relation to that purpose." *Id.* Objective reasonableness is determined under the facts and circumstances of each particular case and "from the perspective and with the knowledge of the defendant officer." *Id.* The following non-exclusive factors bear on the reasonableness of the force used by the defendant officer: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper

5

or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* A court must also consider the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," with appropriate "deference to policies and practices needed to maintain order and institutional security." *Id.* at 2473-74.

### 1.    *Moreno*

Plaintiff alleges that while Moreno was escorting him from the visitation area, he grabbed his shirt. (doc. 3 at 9.) He claims he was surprised and "reflexively pulled away" from Moreno, and "had an exchange of words with [him]." (*Id.*) He alleges that Moreno also violated jail policy because he escorted him without handcuffs or an SRT escort. (docs. 3 at 9; 9 at 13-14.)[4]

Plaintiff fails to allege facts that any physical contact by Moreno was objectively unreasonable. The Supreme Court has made clear that "not every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). While Plaintiff contends that he was later jumped on and assaulted by the other defendants, he does not allege that Moreno participated in those assaults and physically assaulted him, or that he sustained an injury from any contact by Moreno. Accordingly, Plaintiff has not alleged a plausible excessive use of force claim against Moreno.

### 2.    *Valero, Weeks, Mosely, Haggerman, Bailey, and Benson*

Plaintiff alleges that after he yelled at Moreno and pulled away from him, Weeks and Valero

---

[4]Plaintiff's answers to a magistrate judge's questionnaire constitute an amendment to his complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

ran over from the desk, jumped on him, and assaulted him by punching him in the face and mouth. (docs. 3 at 9; 9 at 22, 27.)  After Weeks and Valero restrained him, he contends he resisted their attempts to "slam" his body on the floor because he was afraid that they would "stomp and kick him."  (doc. 3 at 9.)  They carried him to the doorway of his cell, but before he entered his cell, he accused Weeks of punching other inmates.  (*Id.* at 10.)  He alleges that Weeks grabbed and twisted his arm "in a seeming attempt to break [it]," and slammed the cell door into his body causing a "one inch bone deep gash on his right elbow."  (*Id.*)  After Weeks saw the blood from the gash, he released Plaintiff's arm and closed the cell door. (*Id.*)

Plaintiff alleges that Mosely, Haggerman, Bailey, and Benson joined Weeks at his cell to transport him to the infirmary for his elbow injury.  (doc. 3 at 10.)  He claims he complied with their order to get on the floor for cell extraction, but they began assaulting and punching him while he was on the ground.  (docs. 3 at 10; 9 at 22, 28.)  They eventually restrained him by "applying extreme pressure while twisting his arms," and carried him to the infirmary with his arms behind him and his face towards the ground.  (doc. 3 at 11.)  He alleges that once outside the infirmary, Weeks, Mosely, Haggerman, Bailey, and Benson released him, formed a circle around him, and taunted and threatened to kill him.  (docs. 3 at 11; 9 at 22, 29.)

Plaintiff alleges that after he entered the infirmary, Mosely slammed him to the floor and choked him while the other SRTs bent his legs backwards.  (docs. 3 at 11; 9 at 22-23, 29.)  Sanders told them to stop and he was picked up, but after Plaintiff yelled at them, they "took" him back to the floor and continued to choke him to "near unconsciousness."  (*Id.*)  He alleges that the SRTs let him up again and placed him in handcuffs, but they were extremely tight and caused him pain and loss of feeling in his hands.  (docs. 3 at 11-12; 9 at 23, 29.)  He alleges that Haggerman and Mosely then slammed him to the ground while he was handcuffed, and choked him until he lost

consciousness.  (doc. 9 at 23.)  He was then strapped to a chair while his elbow was still bleeding; the gash on his elbow required stitches, and he had a noticeable knot on his right wrist, numbness in his hand from the handcuffs, and bruises.  (docs. 3 at 12; 9 at 23, 30.)  He was very sore and sustained psychological injuries in the form of nightmares, flashbacks, anxiety, and paranoia.  (docs. 3 at 12; 15 at 7.)

In the prison environment, "[t]he amount of force that is constitutionally permissible . . . must be judged by the context in which that force is deployed." *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996).  The use of force by guards is permissible in a variety of situations; not only when it is necessary to protect oneself from an imminent physical attack by an inmate, but when it is necessary to control a "recalcitrant inmate."  *See Brown v. Gusman*, No. CIV.A. 15-1491-DEK, 2015 WL 6827260, at *5-6 (E.D. La. Nov. 6, 2015) (citing *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000); *see, e.g., Calhoun v. Wyatt*, No. 6:11CV4, 2013 WL 1882367, at *6 (E.D. Tex. May 2, 2013) (explaining that inmate's refusal to obey orders "set the stage for the use of force"); *Rios v. McBain*, Civ. No. A504CV84, 2005 WL 1026192, at *7 (E.D. Tex. Apr. 28, 2005) (noting that "open defiance of orders plainly poses a threat to the security of the institution, regardless of whether or not the defiance is emanating from within a locked cell").  "However, an otherwise proper maneuver can obviously cross the constitutional line depending on the degree of force used." *Luke v. Beagron*, No. CV 16-13461, 2016 WL 8740486, at *13 (E.D. La. Dec. 28, 2016), *adopted by* 2017 WL 1407719 (E.D. La. Apr. 20, 2017).  The force used against a detainee must still be reasonable and not excessive in relation to the situation. *See Kingsley*, 135 S.Ct. at 2473; *see, e.g., Martin v. Seal*, No. CIV.A. 11-726-DEK, 2014 WL 2890125, at *5 (E.D. La. Jun. 25, 2014) (concluding that "*some* application of force was necessary and appropriate to restore discipline in the face of plaintiff's continued disobedience") (emphasis original).

Here, Plaintiff has sufficiently alleged facts to support a claim that Valero, Weeks, Mosely, Haggerman, Bailey, and Benson used excessive force under the Fourteenth Amendment. While Plaintiff's initial confrontation and verbal outbursts warranted a response, he alleges that these defendants continued to physically assault him even after he was restrained. "[C]ourts have frequently found constitutional violations in cases where a restrained or subdued person is subjected to use of force." *Kitchen v. Dallas County*, 759 F.3d 468, 478 (5th Cir. 2014); *see e.g., Bourne v. Gunnels*, 921 F.3d 484, 492 (5th Cir. 2019) (explaining that despite the fact that the plaintiff initially violated prison rules and provoked defendants, his allegations that he was physically assaulted by defendants "while on the cell floor handcuffed & shackled, and not a threat at that point" supported an excessive force claim). While no quantum of injury is required, the extent of Plaintiff's alleged injuries further suggests that more than a *de minimis* amount of force was used by these defendants. *See, e.g., Fennell v. Quintela*, 393 F. App'x 150, 152 (5th Cir. 2010) (holding that allegations that one prison officer slammed plaintiff against a wall and injured his shoulder and another officer grabbed and twisted his wrists and injured his wrists, presented a fact issue as to whether the force used was excessive and clearly unreasonable); *Morris v. Trevino*, 301 F. App'x 310, 313 (5th Cir. 2008) (remanding case because allegations that defendant "twisted his arms into painful positions while his hands were handcuffed behind his back, yanked his hands through the tray slot opening of his cell, beat and punched on his arms, and punched him in the face," with resulting "scratches, deep cuts on his arms, bruises, swelling, permanent scarring, mental anguish, and headaches and general pain" supported an excessive force claim to survive preliminary screening).

Plaintiff's factual allegations about the physical force Valero, Weeks, Mosely, Haggerman, Bailey, and Benson used in hitting him, putting him on the floor, restraining his arms, closing the cell door on him, and choking him, which must be taken as true at this stage of the proceedings,

reasonably suggest that the use of force was not "rationally related to a legitimate nonpunitive governmental purpose," was "excessive in relation to that purpose," or was "objectively unreasonable." *See Kingsley*, 135 S.Ct. at 2473-74; *see, e.g., Ryals v. El Paso Cnty.*, No. EP-13-CV-289-PRM, 2015 WL 3540951, at \*5-6 n.9-10 (W.D. Tex. Jun. 3, 2015) (finding plaintiff sufficiently stated a claim for excessive force against defendants based on allegations that they repeatedly slammed him against a wall and a bench, twisted his handcuffs, punched and kicked him while he was in handcuffs and yanked him up by his handcuffs, "causing significant cuts, swelling and bruising to Plaintiff's wrists;" "abrasions, bruising, and a laceration to his head;" and "long term or permanent nerve damage to his hands and wrists and chronic back pain"). His excessive force claims against Valero, Weeks, Mosely, Haggerman, Bailey, and Benson survive judicial screening.

## B.    Failure to Intervene or Protect

Plaintiff has asserted failure to protect or intervene claims against Sanders, Gibbons, Valero, Bailey, Benson, Sergeant, Moreno, and Nurse.  (docs. 3 at 5-6, 11; 9 at 3-5, 13, 15-19.)[5]

The Fifth Circuit has held that an "officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995); *accord Elliot v. Linnell*, 269 F. App'x 450, 451 (5th Cir. 2008).  This reasoning applies when a prison guard fails to take reasonable measures to protect an inmate from another guard's use of excessive force. *Davis v.*

---

[5]His original complaint and MJQ answers alleged that Nurse, Valero, Bailey, Benson, and Moreno failed to intervene to stop an assault or protect him against an assault (docs. 3 at 5-6; 9 at 5, 13, 15, 16, 18), but he did not reassert those claims in his amended complaint (doc. 15 at 4-5, 7-8).  It is a well-settled pleading rule that an amended complaint supersedes and replaces an original complaint. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.").  Out of an abundance of caution, these claims will be considered. *See Ross v. Hutchins Police Dep't*, No. 3:09-CV-0168-M, 2009 WL 1514364, at \*2 (N.D. Tex. May 29, 2009) (explaining that courts may in "an abundance of caution" consider prior *pro se* pleadings).

*Cannon*, 91 F. App'x 327, 329 (5th Cir. 2004) (applying *Hale* in the prison context but finding no bystander liability because there was no excessive force); *Garza v. U.S. Marshals Serv.*, No. Civ.A. B-07-052, 2008 WL 501292, at *3 (S.D. Tex. Feb. 21, 2008) (finding that failure-to-protect claim asserted against a bystander guard survived a motion to dismiss).  To succeed on a bystander liability claim, the plaintiff must demonstrate that the state actor (1) knew a fellow officer was violating his constitutional rights, (2) had a reasonable opportunity to prevent the harm, and (3) choose not to act. *See Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (citations omitted). Bystander "liability will not attach where an officer is not present at the scene of the constitutional violation." *Id.* (citations omitted).  Mere presence at the scene of the alleged use of excessive force, without more, also does not give rise to bystander liability. *See Nowell v. Acadian Ambulance Serv.*, 147 F. Supp.2d 495, 507 (W.D. La. 2001).  The primary focus is on whether the bystander officer has "a reasonable opportunity to realize the excessive nature of the force and to intervene to stop it." *Hale*, 45 F.3d at 919. "[T]hat determination involves consideration of both the duration of the alleged use of force and the location of the suspect relative to the allegedly bystanding officers." *See Malone v. City of Fort Worth, Tex.*, No. 4:09-CV-634-Y, 2014 WL 5781001, at *16 (N.D. Tex. Nov. 6, 2014).

### 1.     *Sanders and Gibbons*

Plaintiff alleges that when he was brought to the infirmary, Sanders and Gibbons were present and witnessed the other defendants physically assault him, but did not intervene to stop the assaults.  (doc. 3 at 11.)  He claims that the force used against him "was a prolonged assault, lasting perhaps a period of several hours."  (doc. 9 at 27.)  Plaintiff has sufficiently alleged a failure to intervene claim against Sanders and Gibbons that survives frivolity screening. *See, e.g., Thomas v. Castillo*, No. 5:17-CV-298-BQ, 2018 WL 4290801, at *4 (N.D. Tex. July 31, 2018) (finding

plaintiff's allegations that officer observed another officer's use of force and assisted in pinning his legs down was sufficient to survive preliminary screening), *adopted by* 2018 WL 4283558 (N.D. Tex. Sept. 7, 2018).

### 2.    *Valero, Bailey, and Benson*

Plaintiff alleges that Valero, Bailey, and Benson failed to intervene to protect him from the use of excessive force by the other defendants while also participating in the exercise of excessive force against him.  (*See* doc. 9 at 5, 15-16)  As discussed, Plaintiff has stated a claim for excessive force against these defendants.  Accepting the same allegations as true and viewing them in the light most favorable to Plaintiff, he has also sufficiently alleged a failure to intervene claim against Valero, Bailey, and Benson that survives frivolity screening. *See Rogers v. Buchanan*, No. 3:12-CV-2458-M-BN, 2015 WL 3439145, at *9 (N.D. Tex. Mar. 27, 2015) (finding allegations that defendants participated in the alleged beating of plaintiff also supported a claim for failing to intervene), *adopted as modified by* 2015 WL 3504518 (N.D. Tex. May 28, 2015).

### 3.    *Sergeant*

Plaintiff generally alleges that Sergeant witnessed the assaults and is liable for failing to intervene and stop the assaults.  (docs. 9 at 3-4; 15 at 4.)  As noted, "an officer must be present at a scene involving another officer's use of excessive force before he may be held liable for failure to intervene." *Gilbert v. French*, 364 F. App'x 76, 83 (5th Cir. 2010).  Although Plaintiff alleges that Sergeant witnessed the assaults because he was the supervisor on duty and had access to surveillance cameras, he does not allege that Sergeant was physically present at the time and place of the alleged assaults.  *See, e.g., Bivens v. Forrest Cty.*, No. 2:13-CV-8-KS-MTP, 2015 WL 1457529, at *19 (S.D. Miss. Mar. 30, 2015) (dismissing failure to intervene claim because plaintiffs did not plead "any facts placing [defendant] at the scene of the alleged" constitutional violation).  Even if Sergeant

actually witnessed the assaults via the surveillance cameras, Plaintiff failed to allege facts that Sergeant was close enough to have the opportunity to intervene. *See, e.g., Montgomery v. Hollins*, No. 3:18-CV-1954-M-BN, 2019 WL 2424053, at *4 (N.D. Tex. May 8, 2019) (dismissing bystander liability claims against officers on summary judgment because the evidence failed to show that the proximity of the officers to the excessive force incident gave them a reasonable opportunity to intervene), *adopted by* 2019 WL 2422493 (N.D. Tex. June 10, 2019). Because there are no factual allegations that Sergeant was present during the alleged assaults and had a reasonable opportunity to intervene, the failure to intervene claim against him is legally frivolous and should be dismissed.

### 4.   *Moreno*

Plaintiff alleges that when he pulled away from Moreno and verbally confronted him, Weeks and Valero "came running, [] jumped on [his] back, and began punching him." (doc. 9 at 14.) He alleges that "[a]t know[sic] time did [Moreno] intervene or try to descalate[sic] the incident or to protect [him] from being assaulted." (*Id.*)

"Physical proximity alone is insufficient to establish bystander liability." *Vasquez v. Chacon*, No. CIV.A. 3:08-CV-2046-M-BH, 2009 WL 2169017, at *7 (N.D. Tex. July 20, 2009) (citation omitted), aff'd by 390 F. App'x 305 (5th Cir. 2010). While Plaintiff claims that Moreno was present during the assault by Weeks and Valero, he has not alleged facts indicating where Moreno was standing or the duration of the initial assault. He claims that after Weeks and Valero restrained him, he resisted their attempts to "slam" his body on the floor because he was afraid that they would "stomp and kick him," and they carried him to the doorway of his cell, where he accused Weeks of punching other inmates. (doc. 3 at 9-10.) He does not allege that Moreno was present the entire time that Weeks and Valero restrained him or carried him to his cell. He also does not allege that Moreno was physically present when he was assaulted by the other defendants at his cell and at the

infirmary. Because Plaintiff has not alleged facts showing that Moreno realistically had the opportunity to prevent the initial use of force by Weeks and Valero, or that Moreno had sufficient time to intervene during the first alleged assault, his claim that Moreno failed to protect him does not survive. *See Gilbert v. French*, No. CIV. A. H-06-3986, 2008 WL 394222, at *27 (S.D. Tex. Feb. 12, 2008) (granting summary judgement for defendants as there was no indication that officers had time to prevent use of excessive force that occurred over the span of a few seconds); *Paternostro v. Crescent City Connection Police*, No. CIV. A. 00-2740, 2002 WL 34476319, at *11 (E.D. La. Apr. 2, 2002) (finding that bystander liability claim failed because officer was not in a location from which he could have had a realistic opportunity to prevent the violations of another officer).

   5.    *Nurse*

   Plaintiff alleges that he was "assaulted in the presence of [Nurse] in the infirmary," but she "fail[ed] to intervene to stop the assault." (doc. 9 at 18.)

   Although corrections officers may be liable under § 1983 if they fail to intervene or stop unconstitutional use of force by other officers or prison officials, prison medical staff are not law enforcement officers and have no legal duty to intervene on behalf of an inmate in the midst of physical altercations with staff. *See Grandpre v. Correct Health*, No. CV 16-1543, 2016 WL 4539442, at *11 (E.D. La. Aug. 29, 2016) ("[W]here the defendant is a medical professional, and not a correctional officer, no [ ] special duty [to protect] exists, and an inmate may not sustain a failure to intervene claim."), *adopted sub nom. by Grandpre v. Health*, No. CV 16-1543, 2016 WL 4987265 (E.D. La. Sept. 19, 2016); *Winsberry v. Terrebonne Par. Criminal Justice Complex*, No. CV 16-13528, 2016 WL 7355419, at *6-7 (E.D. La. Nov. 17, 2016) (concluding that bystander liability claim against nurses for standing by during the alleged use of force was legally frivolous and failed to assert facts sufficient to state a claim), *adopted by* 2016 WL 7336516 (E.D. La. Dec.

14

19, 2016); *see also Ali v. McAnany*, 262 F. App'x 443, 446 (3d Cir. 2008) (concluding that a claim

for failure to intervene should be dismissed against the defendant prison nurse "because she is not

a corrections officer and thus did not have a duty to intervene"); *Thomas v. City of Troy*, 293 F.

Supp. 3d 282, 297 (N.D.N.Y. 2018) (dismissing failure to intervene claim against county medical

examiner where the plaintiff failed to "allege facts plausibly suggesting that [the defendant was] a

law enforcement officer," and noting that "generally, the duties of a medical examiner are

independent of those of a police officer").  Even if Nurse had a duty to intervene in this case,

Plaintiff has not alleged facts indicating that she had the authority or realistic ability to stop the

SRTs from exercising any excessive force that she witnessed. *See Whitley*, 726 F.3d at 646.

Accordingly, Plaintiff's failure to intervene claim against Nurse fails as a matter of law and should

be dismissed.

## C.    <u>Medical Care</u>

The Constitution requires humane conditions of confinement, which includes the receipt of

adequate medical care.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).[6]  Prison officials violate this

requirement only when (1) the deprivation is objectively and sufficiently serious such that the act

or omission results in the denial of "the minimal civilized measure of life's necessities" and (2) the

official had a culpable state of mind.   *Id.* at 834 (citations omitted).   The objective component

requires deprivation of a sufficiently serious medical need "[b]ecause society does not expect that

prisoners will have unqualified access to health care."  *Hudson*, 503 U.S. at 9.  To satisfy the second

component, the officials must be deliberately indifferent "to a substantial risk of serious harm to an

---

[6]A pretrial detainee's constitutional rights related to conditions of confinement "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment" rather than from the prohibition against cruel and unusual punishment contained within the Eighth Amendment. *Hare*, 74 F.3d at 639 (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)).  Because basic human needs such as medical care are the same for pretrial detainees and convicted inmates, the same standards apply under both amendments. *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001).

inmate."[7] *Farmer*, 511 U.S. at 828. This state of mind requires more than negligence but less than intent to cause harm or knowledge that harm will result from the acts or omissions. *Id.* at 835. An official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

"Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight." *Alvarez v. City of Brownsville*, 904 F.3d 382, 391 (5th Cir. 2018) (en banc) (citations omitted). This state of mind "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citations and internal quotation marks omitted). A detainee must show that prison personnel "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't Crim. J.*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). "[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). Constitutionally adequate care does not ensure that an inmate will agree with every treatment decision. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976).

### 1. Elbow Injury

Plaintiff alleges that he was examined by Nurse on the day of his injuries but only received

---

[7]If a pretrial detainee's claim is based upon a jail official's "episodic acts or omissions," the *Farmer* standard of subjective deliberate indifference is the measure of culpability. *Hare*, 74 F.3d at 643; *accord Zimmerman v. Cutler*, 657 F. App'x 340, 348 (5th Cir. 2016) ("In this circuit, a constitutional claim by a pretrial detainee arising from a one-time denial of medical care is governed by a standard of subjective deliberate indifference as enunciated by the Supreme Court in *Farmer*.") (citations and quotations omitted).

"very basic first aide[sic]." (doc. 9 at 31.)  He contends that it was not until the following day that he "finally received stitches for the deep gash on [his] right elbow." (*Id.*)

"A disagreement about the recommended medical treatment is generally not sufficient to show deliberate indifference, but the denial of recommended medical treatment is often sufficient to show deliberate indifference." *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018).  A delay in medical care is a constitutional violation only if there has been deliberate indifference that results in substantial harm.  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).  While Plaintiff suggests that Nurse should have immediately provided stitches, he has not alleged that as a result of any delay there was substantial harm done to him.  He has not alleged that Nurse gave him stitches the next day instead of a doctor.  His allegations of delayed medical treatment by Nurse are not sufficient to state a violation of his constitutional rights. *See Lee v. Richland Par. Det. Ctr.*, 483 F. App'x 904, 905 (5th Cir. 2012) (holding that delays in administering medicine do not amount to a constitutional violation where there is no evidence that the defendants "delayed or refused medical treatment with subjective knowledge of facts from which an inference of substantial risk of serious harm could be drawn") (citation omitted); *Morrow v. Harris Cty. Jail*, 2006 WL 1295647, *2 (S.D. Tex. May 11, 2006) (holding that medical staff were not deliberately indifferent when, after the plaintiff fell at the jail, he was given Tylenol for pain, but never saw a doctor until he was transferred to prison a month later, where there was no evidence that the delay resulted in substantial harm).

## 2. *Psychological Injuries*

Plaintiff claims he also sustained "numerous and permanent psychological damages" and "is now assaulted by nightmares, flashbacks, anxiety, and paranoia." (*Id.*; doc. 15 at 7.) He alleges that Nurse was "well aware of the seriousness of the [psychological] damages, . . . [but] refused to provide adequate medical care."  (*Id.*)

17

As discussed, a prison official's "failure to alleviate a significant risk that [she] should have perceived, but did not is insufficient to show deliberate indifference." *See Domino*, 239 F.3d at 756 (citations and quotations omitted). Plaintiff generally alleges that Nurse refused to treat his psychological injuries, but there are no allegations that he sought psychological treatment, or that he directly notified Nurse of his psychological injuries. *See, e.g., Zimmerman v. Cutler*, 657 F. App'x 340, 348 (5th Cir. 2016) (holding that defendant could not be subjectively aware of detainee's broken arm where "fracture in [detainee's] arm was not obvious"; "[h]is only obvious injuries were the scratches on his arm"). His bald, unadorned allegations are insufficient to survive the minimal pleading requirements for pre-screening under §§ 1915A and 1915(e). *See Iqbal*, 556 U.S. at 678.

Accordingly, Plaintiff has not alleged a cognizable constitutional cause of action against Nurse with respect to his medical care, and his medical care claims should therefore be dismissed.

## D.    <u>Failure to Train and Supervise</u>

### 1.    *Sheriff*

Plaintiff alleges that Sheriff failed to train and supervise the defendant officers that assaulted him, and sues her in her official and individual capacities. (docs. 9 at 2; 15 at 4.)

#### a.    **Official Capacity**

An official capacity claim is another way of pleading an action against the entity of which the individual defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (noting "[i]t is *not* a suit against the official personally, for the real party in interest is the entity") (emphasis in original). Plaintiff's suit against Sheriff in her official capacity is an action against her municipal employer, i.e., Dallas County. *See Stiff v. Stinson*, No. 3:12-CV-4998-D, 2013 WL 3242468, at *3

(N.D. Tex. June 27, 2013) (citing *Graham*, 473 U.S. at 165).  Municipalities, including counties,[8]

may be held liable under § 1983.  *Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224

(5th Cir. 2008).  To hold a municipality liable under § 1983, however, a plaintiff must show an

"underlying claim of a violation of rights," as well as "a policymaker; an official policy; and a

violation of constitutional rights whose 'moving force' is the policy or custom." *Cox v. City of

Dallas*, 430 F.3d 734, 748 (5th Cir. 2005).  The official policy requirement means that municipal

liability under § 1983 is "limited to action for which the municipality is actually responsible."

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986).

As noted, "[p]retrial detainees are protected by the Due Process Clause of the Fourteenth

Amendment." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017).  In the

context of claims by pretrial detainees, the Fifth Circuit has distinguished between cases challenging

specific acts and omissions and those alleging constitutional deprivations by virtue of the general

conditions of confinement.  *See Hare*, 74 F.3d at 644.  A conditions of confinement case is a

constitutional attack on "general conditions, practices, rules, or restrictions of pretrial confinement."

*See id*.  In those cases, the harm is caused by the condition itself.  *See id.*  "This is true, for example,

where inadequate food, heating, or sanitary conditions themselves constitute miserable conditions."

*Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc).  The Fifth Circuit has concluded that

where a pretrial detainee challenges the general conditions of confinement, as opposed to particular

acts or omissions, a constitutional violation exists only if the court finds that the conditions of

confinement are not reasonably related to a legitimate, non-punitive governmental objective.  *See

Hare*, 74 F.3d at 640 (citing *Bell*, 441 U.S. at 538-39, 99); *see also Scott*, 114 F.3d at 53.

---

[8]The municipal liability analysis also applies to Texas counties.  *See Prince v. Curry*, No. 10-10294, 2011 WL 1659493, at * 3 n.3 (5th Cir. Apr. 28, 2011); *Brady v. Fort Bend Cty.*, 145 F.3d 691 (5th Cir. 1998).

In contrast, where a plaintiff's allegations are based on a particular act or omission of one or more officials, the action is characterized as an "episodic act or omission" case. *See Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999); *Hare*, 74 F.3d at 645. To succeed in holding a municipality liable, the plaintiff must show a municipal employee's subjective indifference and that the municipal employee's act "resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference to the [plaintiff]'s constitutional rights." *Hare*, 74 F.3d at 650 at 649 n.4; *accord Olabisiomotosho*, 185 F.3d at 526.

"A government entity may incur Section 1983 liability for episodic acts and omissions injurious to a pretrial detainee if plaintiffs first prove that County officials, acting with subjective deliberate indifference, violated [his] constitutional rights; and plaintiffs then establish that the County employees' acts resulted from a municipal policy or custom adopted with objective indifference to the detainee's constitutional rights." *Sanchez v. Young Cty.*, 866 F.3d 274, 280 (5th Cir. 2017) (citing *Hare*, 74 F.3d at 649 n.4). The subjective deliberate indifference standard focuses on what the municipal employee actually knew. *Olabisiomotosho*, 185 F.3d at 526. The objective deliberate indifference standard considers not only what the policymaker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights. *Lawson v. Dallas Cty.*, 286 F.3d 257, 264 (5th Cir. 2002).

A claim under § 1983 that a municipality's failure to provide training to its employees resulted in the constitutional deprivation "can only yield liability against a municipality where that [municipality's] failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under § 1983." *Id.* at 389. To succeed on a failure to train claim against a municipality, a

plaintiff must show (1) inadequate training procedures; (2) that inadequate training caused the constitutional violation; and (3) the deliberate indifference of municipal policymakers. *Westfall v. Luna*, 903 F.3d 534, 552 (5th Cir. 2018) (citation omitted).  As the Fifth Circuit explained,

> it is not enough for a plaintiff to show that the municipality's training program is, in a general sense, wanting. Rather, the plaintiff must prove an affirmative answer to the question "Would the injury have been avoided had the employee been trained under a program that was not deficient in the *identified respect*?"

*Hinojosa v. Butler*, 547 F.3d 285, 297 (5th Cir. 2008) (quoting *City of Canton*, 489 U.S. at 391.) (emphasis added in *Hinojosa*).  While a municipality's failure to properly discipline its employees can be unconstitutional if a policy was "pursued with deliberate indifference toward the constitutional rights of citizens," isolated incidents of employee wrongdoing alone do not support a finding that training is inadequate. *See Piotrowski v. City of Houston*, 237 F.3d 567, 581 (5th Cir. 2001).

Plaintiff has failed to allege facts that the moving force behind the violation of his constitutional rights were from a municipal policy or custom that was adopted with objective indifference to the inmate's constitutional rights.  *See Hare*, 74 F.3d at 650 at 649 n.4; *see also Olabisiomotosho*, 185 F.3d at 526.  He specifically alleges there was no official custom or policy of Dallas County that resulted in his injuries.  (doc. 9 at 21.)  He has not described a policy or custom and its relationship to the underlying constitutional violations.  Although Plaintiff argues that Sheriff's employees committed multiple constitutional violations, there are no allegations that their training was inadequate, that the violations resulted from inadequate training, or that Sheriff was deliberately indifferent to the risk that inadequate training would lead to their repeated uses of excessive force against him. *See Hinojosa*, 547 F.3d at 297.  Because Plaintiff failed to plead facts that "show similar incidents of excessive force," knowledge or approval by a policymaker of a

pattern or practice of excessive force, or a failure to train officers by a final policymaker, he has failed to allege a constitutional violation by Sheriff in her official capacity. *See Davenport v. City of Garland, Tex.*, No. 3:09-CV-798-B, 2010 WL 1779620, at *3 (N.D. Tex. Apr. 9, 2010), *adopted by* 2010 WL 1779619 (N.D. Tex. Apr. 30, 2010).

### b.   Individual Capacity

A supervisory official cannot be held liable in his or her individual capacity for the unconstitutional actions of subordinates based on any theory of vicarious or *respondeat superior* liability. *See Estate of Davis ex rel. McCully v. City of North Richmond Hills*, 406 F.3d 375, 381 (5th Cir. 2005). In order to prevail against a supervisor under § 1983, a plaintiff must show that: (1) the supervisor's conduct directly caused a constitutional violation; or (2) that the supervisor was "deliberately indifferent" to a violation of a constitutional right. *Breaux v. City of Garland*, 205 F.3d 150, 161 (5th Cir. 2000). There must be some showing of personal involvement by a particular individual defendant to prevail against such individuals. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999).

To establish liability on a failure to supervise or train claim, "the plaintiff must show that (1) [the supervisor] failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights." *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005). A negligent failure to train is insufficient; a plaintiff must show that the failure to train was done with "deliberate indifference" to his rights. *See Brd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997) ("A showing of simple or even heightened negligence will not suffice."). A showing of deliberate indifference usually requires "[p]roof of more than a single instance of the lack of training or supervision causing a

22

violation of constitutional rights." *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001); *see, e.g., Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) ("Mere proof that the injury could have been prevented if the officer had received better or additional training cannot, without more, support liability.") (citation omitted). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Davis*, 406 F.3d at 381.

"[C]ourts are reluctant to impute knowledge to supervisory or policy-making officials, and absent imputed knowledge, courts cannot find deliberate indifference." *Batiste v. City of Beaumont*, 421 F. Supp. 2d 969, 987 (E.D. Tex. 2005). They have consistently held that knowledge may be imputed to a supervisory official only in those cases where there is a history of widespread abuse, "and even then only when there is a causal connection between the failure to supervise or train and the constitutional violation, and the failure to supervise or train amounts to deliberate indifference." *Batiste v. City of Beaumont*, 421 F. Supp. 2d 1000, 1006 (E.D. Tex. 2006). Plaintiffs must at least present evidence showing a pattern of similar violations. *See Estate of Davis*, 406 F.3d at 381; *Thompson*, 245 F.3d at 459. A single incident of an alleged constitutional violation may serve as a basis for liability, however, if a plaintiff "prove[s] that the 'highly probable' consequence of a failure to train [or supervise] would result in the specific injury suffered, and that the failure to train [or supervise] represents the moving force behind the [c]onstitutional violation." *Estate of Davis*, 406 F.3d at 385-86. To prove the existence of deliberate indifference, Plaintiff must present evidence that Sheriff had notice of a pattern of similar violations in the past but failed to train or supervise, or that the highly predictable consequence of her failure to train or supervise was the injury to Plaintiff. *See Estate of Davis*, 406 F.3d at 381-86; *Thompson*, 245 F.3d 458-59.

Here, Plaintiff alleges that there is a long-standing pattern of officers assaulting inmates, that

23

Sheriff was aware of that pattern, and that she has been deliberately indifferent to the assaults by failing to discipline officials or to stop the assaults. (doc. 9 at 20.) He speculates that there are internal and external reports and complaints of assaults involving her employees, and that she was aware of these reports and complaints. (*Id.*) Plaintiff failed to plead facts showing similar incidents of excessive force, and that Sheriff was both aware of facts from which the inference could be drawn that a substantial risk of serious harm towards Plaintiff existed, and that she drew that inference. *See Estate of Davis*, 406 F.3d at 381. The fact that there have been prior complaints of assault does not necessarily mean that excessive force was actually used in those cases. Further, Plaintiff has not alleged that Sheriff "affirmatively participate[d] in the acts that cause[d] the [alleged] constitutional deprivation[s]." *See Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011); *see, e.g., Johnson v. Valdez*, No. 3:13-CV-2173-B, 2013 WL 5489957, at *2 (dismissing claims against a sheriff for failure to allege any personal involvement); *Carson v. Dallas Cty. Jail*, No. 3:13-CV-0678-K, 2013 WL 3324222, at *2-3 (N.D. Tex. June 28, 2013) (dismissing claims against a sheriff and other supervisory officials for failure to allege any personal involvement). Because he has not alleged facts that Sheriff was deliberately indifferent to any widespread use of excessive force or was personally involved in the alleged constitutional violations, Plaintiff's claims against Sheriff in her individual capacity for failure to supervise or train should be dismissed for failure to state a claim.

### 2. Sergeant

Plaintiff generally alleges that Sergeant is also liable in his role as supervisor over some of the defendants that assaulted him. (docs. 9 at 3-4; 15 at 4.) As discussed, however, a supervisory official cannot be held personally liable for the actions of subordinates under a theory of vicarious or *respondeat superior* liability. *See Estate of Davis*, 406 F.3d at 381.

Plaintiff does not allege facts showing that Sergeant had notice of a pattern of similar

violations in the past but failed to train or supervise, or that the highly predictable consequence of his failure to train or supervise would result in injury to Plaintiff. *See Estate of Davis*, 406 F.3d at 381-86; *Thompson*, 245 F.3d 458-59. To the extent he claims Sergeant failed to properly supervise the officers, his allegations that there were other complaints about excessive force does not support his claim that Sergeant was deliberately indifferent and failed to supervise. Further, he has not alleged facts that show Sergeant was personally involved in any alleged violations of his civil rights. *See Champagne*, 188 F.3d at 314; *Porter*, 659 F.3d at 446. As noted, Plaintiff failed to allege that Sergeant was present at the scene of the alleged assaults by the other defendants. *See Whitley*, 726 F.3d at 646 (concluding that bystander "liability will not attach where an officer is not present at the scene of the constitutional violation"). Accordingly, the failure to train and supervise claim against Sergeant should be dismissed.

### 3.   *Nurse's Employer and Supervisor*

Plaintiff generally alleges that Nurse's unnamed employer and supervisor failed to supervise and train her. (doc. 15 at 5.) His conclusory allegations do not state a claim of failure to supervise and train, however. As discussed, Plaintiff has not alleged a constitutional violation claim against Nurse, so he has not alleged that any failure to supervise and train her resulted in a constitutional violation. *See Breaux*, 205 F.3d at 161. His claims against Nurse's employer and supervisor should be dismissed.

## E.   <u>Conspiracy</u>

Plaintiff alleges that several of the defendants "conspired" to violate his constitutional rights. (doc. 15 at 6-7.)

Generally, to prove a conspiracy under § 1983, a plaintiff must allege facts that demonstrate there was an agreement among individuals to commit a constitutional deprivation and an actual

deprivation occurred. *See Jabary v. City of Allen*, 547 F. App'x 600, 609 (5th Cir. 2013); *Cinel v. Connick*, 15 F.3d 1338, 134 (5th Cir. 1994). A conspiracy allegation under § 1983 allows a plaintiff to "impose liability on all of the defendants without regard to who committed the particular act." *Hale*, 45 F.3d at 920. To meet his pleading requirement, Plaintiff must set forth facts that support that an agreement took place. *See, e.g., Jabary*, 547 F. App'x at 610-11 ("The times, places, and other circumstances of the 'private meetings' and secret conversations are notably absent. [Plaintiff] simply fails to create a reasonable inference that such an agreement existed."). More than a blanket accusation that defendants agreed to commit an illegal act is necessary to support a § 1983 conspiracy claim. *See Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987) ("Bald allegations that a conspiracy existed are insufficient."). Further, mere allegations of similar conduct that could have occurred independently without an agreement, also known as parallel conduct, is insufficient. *See Jabary*, 547 F. App'x at 610; *see also Twombly*, 550 U.S. at 556-57.

Plaintiff provides no details about where or when an agreement took place, the content of the agreement, or even who was present. His bald allegations that the defendants entered into an agreement to use excessive force does not suffice. *See Bowen v. Quarterman*, 339 F. App'x 479, 482 (5th Cir. 2009) (finding that allegations that it was reasonable to believe that the defendants were part of a conspiracy, without any facts that tended to show an agreement between them, were insufficient to state a viable conspiracy claim) (citing *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986)). Because Plaintiff has failed to sufficiently plead facts of any agreement to violate his constitutional rights, his conspiracy claim should be dismissed as frivolous.

## IV. RECOMMENDATION

All claims against all defendants, except for the excessive force claims against Valero, Weeks, Mosely, Haggerman, Bailey, and Benson, and the failure to intervene claims against

Gibbons, Sanders, Valero, Bailey, and Benson, should be **DISMISSED** with prejudice as frivolous under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

    **SIGNED this 3rd day of December, 2019.**

_(signature)_

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_(signature)_

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE